## BUD FOSTER v. STATE.

No. A-2430.    Opinion Filed November 23, 1918.

(175 Pac. 944.)

FALSE PRETENSES—Information—Evidence—Variance. Where the information for false pretenses alleges that the accused obtained money and a credit for money at a certain bank by means of a certain false pretense, and the proof on the part of the state discloses that the accused obtained neither money nor a credit for money at said time, it is **held** that the evidence does not sustain the allegations of the information and the judgment of conviction must be reversed.

*Appeal from District Court, Cotton County;*
*J. T. Johnson, Judge.*

Bud Foster was convicted of the crime of false pretenses and sentenced to be imprisoned in the state penitentiary at McAlester for a period of six months, and he appeals. Reversed and cause remanded.

*R. H. Galyen*, for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *R. McMillan*, Asst. Atty. Gen., for the State.

MATSON, J. Bud Foster was convicted in the district court of Cotton county of the crime of false pretenses, and prosecutes an appeal to this court from such judgment of conviction, and among other assignments of error contends that the trial court erred in not sustaining his demurrer to the state's evidence and directing a verdict of not guilty, in that there is no competent evidence to sustain the allegations of the information. With this contention this court is compelled to agree, although the record discloses conduct on the part of the plaintiff in error which merits, not only condemnation, but punishment as well.

The charging part of the information is as follows:

"That at and within said county and state, on the 24th day of December, 1912, Bud Foster then and there being, did then and there, willfully, unlawfully, designedly and fraudulently and feloniously, obtain from the First National Bank of Walters, Okla. (a corporation), the sum of $207.10, in good and lawful money of the United States, by then and there falsely, designedly, fraudulently and feloniously representing to it the said First National Bank of Walters, Okla., that he, the said Bud Foster, was then and there the owner of four red cows, four to seven years old and of the value of $150, one red heifer two years old of the value of $30, one red heifer calf, two red bull calves, one brown mare seven years old, named Daisy, value $100, one brown mare eight years old, named Dolly, value $125,

one sorrel horse, three years old, named Dan, value $125, on all of which above-described property he, the said Bud Foster, then and there gave to the said First National Bank of Walters, Okla., a chattel mortgage in writing, to secure the payment of the said $207.10, so as aforesaid obtained from it, the said First National Bank by him, the said Bud Foster, when in truth and in fact he, the said Bud Foster, was not the owner of any of the above-described, four red cows, one red heifer calf, two red bull calves, one brown mare, seven years old, named Daisy, one brown mare, eight years old, named Dolly, or one sorrel horse, three years old, named Dan, as he, the said Bud Foster, then and there well knew. That it, the said First National Bank of Walters, Okla., acting by and through its president, George W. Graham, relying upon the representations of him, the said Bud Foster, that he was the owner of the above-described property and believing said representations to be true, was induced to and did loan and advance credit to him, the said Bud Foster, in the sum of $207.10 aforesaid, and did take the security on the above-described property aforesaid, for the payment of the said $207.10, which said representation, on the part of him, the said Bud Foster, were then and there made with the intent to cheat, wrong and defraud the said First National Bank of Walters, Okla., out of said sum of $207.10 and interest thereon aforesaid, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state."

In support of the allegations of the foregoing information, the state introduced several witnesses, but it is only necessary to consider the evidence given by Mr. George W. Graham, who was president of the First National Bank of Walters, Okla., and with whom the defendant dealt at the time it is alleged the offense was committed. It appears from the record that the defendant had, on occasions prior to the one forming the basis of this prosecution, several transactions with the First National Bank

of Walters, acting through its president, Mr. Graham, in which sums of money were loaned to the defendant and certain securities in the form of chattel mortgages were given by him.

From time to time payments were made by the defendant on these loans, both of interest and principal, until the various transactions culminated in his giving a note for $207.10 to said bank secured by chattel mortgage on certain personal property, which afterwards turned out not to be his. At the time this note for $207.10 was given, the defendant secured neither money nor credit for money at said bank. This fact is admitted by the president of the bank in his cross-examination, and the defendant contends, therefore, that the information having charged that he obtained either money or credit for money, or both money and credit for money, the failure to prove that he procured either as alleged in the information is fatal to the prosecution, in that it wholly fails by competent evidence to sustain the conviction.

We quote as follows from the cross-examination of the witness Graham:

"Q. I say the credit of $35, $25, or $35, you say it might have been that much; but when you took the credit off of this note and when you added the interest to it, and then deducted the amount that was paid, that that was due and owing on this note left the balance for which you took this note and mortgage of $207.10? A. That is about correct. Q. And you did not at that time advance Mr. Foster as much as a copper cent? A. I don't know whether I did or not. Q. Do you know whether you did or not? A. No, sir; I said I didn't know. Q. Will you say that you did? A. I will not say that I did not. Q. But you now say you delivered Mr. Foster this old note of a year before of $216.25 and took this note with the mortgage for $207.10? A. Yes, sir.

\* \* \* \* \* \* \* \* \* \* \* \*

"Q. The only object you had in view, Mr. Graham, in taking this note, this new note and this new mortgage, was to give to Mr. Foster the amount of credit that he was entitled to have on this note, and then to take past-due paper up and bring it into paper that the banks consider live, and you just took this additional security for the giving of this note? Isn't that a fact? A. There was nothing said about credit at all. We took that in payment for money he owed us. Q. That is true, before that time, before you took this note? A. That is what I took that particular note for, for money he owed us and past due. Q. He owed this money before you took this note? A. Yes, sir; he would have to owe it before we took it. Q. Then it was—the taking of this note was just simply additional security? A. It was not additional security; it was security in itself for the money he owed us past due. Q. And this note represented that amount? A. Yes, sir. Q. And so you transferred it from this note into this note and handed Bud Foster this note for the reason he had given a new note, and that is all you gave Bud Foster, was this note, wasn't it? A. Gave him that because I considered it paid, taking that in payment. Q. And that is all you gave Bud Foster on December 24, 1912, wasn't it, at the time this note and mortgage was executed? A. I presume it was. Q. That's all."

It is apparent from the cross-examination of the prosecuting witness that the transaction upon which this prosecution is based was the renewal of a note given to the bank for a sum of money which the defendant had obtained from said bank some two or three years previous to the transaction upon which this prosecution is based.

At the time the note for $207.10 was executed, and the chattel mortgage delivered to the bank, it is not contended that the defendant obtained either money or the credit for money at said bank as alleged in the informa-

tion. If he obtained property of any value whatever, it was other and different property from that for which he was informed against and placed upon trial.

It is apparent, therefore, that the evidence introduced in behalf of the state does not sustain the allegations of the information, and is not sufficient in law to make out a case of guilt of the offense charged against this defendant beyond a reasonable doubt. The demurrer of the defendant to the evidence, therefore, should have been sustained, and the court should have directed the jury to return a verdict of not guilty because of the variance between the allegations and the proof produced on the part of the state.

For the reasons stated, the judgment of conviction must be reversed and the cause remanded to the district court of Cotton county for further proceedings in accordance herewith.

DOYLE, P. J., and ARMSTRONG, J., concur.